005408.00101
39039994.1

Daniel R. Shaw (SB No. 281387)
daniel@snydershaw.com
Snyder & Shaw LLP
3196 S. Higuera Street, Suite E
San Luis Obispo, CA 93401
Telephone: (805) 439-4646
Facsimile: (805) 301-8030
Attorneys for Plaintiff

Kyle A. Raney (SB No. 293652)
Kendra G. Tovey (SB No. 323280)
ktovey@lozanosmith.com
LOZANO SMITH
One Capitol Mall, Suite 640
Sacramento, CA 95814
Telephone: (916) 329-7433
Facsimile: (916) 329-9050
Attorneys for Janesville Union Elementary School District

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.L., a minor child; by and through his guardian ad litem Erin Calvert,<br><br>Plaintiff,<br><br>v.<br><br>Janesville Union Elementary School District,<br><br>Defendant. | **JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE** |

Plaintiff O.L., by and through his guardian ad litem, Erin Calvert, Janesville Union Elementary School District ("the District" and collectively with Plaintiff, "the Parties"), hereby petition the Court for approval of the Parties' proposed global settlement of this matter, and of the minor's compromise included herein.

///

///

1 | **JURISDICTION**

2        This is a civil action in which Plaintiff O.L. and the District are jointly seeking approval

3 of a minor's compromise involving claims over which this Court has original subject matter

4 jurisdiction pursuant to 28 U.S.C. § 1331, as the alleged actions being resolved arise under the

5 following laws of the United States: Title II of the Americans with Disabilities Act, Section 504

6 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), and 20 U.S.C. § 1415[1].

7        Venue in this Court is proper under 20 U.S.C. 1391(b) because the Defendants reside in

8 this judicial district and a substantial part of the events or omissions giving rise to the claims

9 occurred in this judicial district.

10 | **PARTIES**

11       Plaintiff O.L. is a male disabled minor student with autism born on November 7, 2014.

12 O.L. is a special education student who is an individual with exceptional needs within the

13 meaning of that term under California Education Code § 56026.  O.L. is an individual with

14 mental impairments that substantially limited many major life activities within the meaning of 34

15 C.F.R. § 104.3(j).  O.L. is entitled to be free from discrimination based on his disability.

16       The District is a public entity duly incorporated and operating under California law as a

17 school district.  The District is a public entity and recipient of federal financial assistance subject

18 to the requirements of Title II of the Americans with Disabilities Act and Section 504 of the

19 Rehabilitation Act of 1973.

20       In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated

21 state sovereign immunity, and thus the District may be sued pursuant to Title II.  *Hanson v. Med.*

22 *Bd. Of California*, 279 F.3d 1167, 1170 (9th Cir. 2002).  By accepting federal funds, the District

23 waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to

24 Section 504 of the Rehabilitation Act of 1973.  *Pugliese v. Dillenberg*, 246 F.3d 937 (9th Cir.

25 2002).

26 ///

---

27
28

[1] See *P.R. by & through Rice v. Fresno Unified Sch. Dist.*, No. 119CV00220DADBAM, 2019 WL 1651267, (E.D. Cal. Apr. 17, 2019); and *S.G.P. by & through Parks v. Tehachapi Unified Sch. Dist.*, No. 122CV01066ADACBD, 2022 WL 17406537, (E.D. Cal. Dec. 2, 2022).

005408.00101
39039994.1

1

## BACKGROUND

2

### This Petition is Being Brought on the Following Grounds:

3       O.L. is an eight-year-old special education student who qualifies for special education

4   under a primary eligibility of autism and a secondary eligibility of speech and language

5   impairment. O.L. has deficits in all areas of academics, sensory processing, expressing language,

6   receptive language, social skills, and behavior.  A current dispute exists between the Parties

7   related to the educational services provided to O.L.  The District denies all allegations.

8       On November 8, 2022, O.L., by and through his guardian ad litem and mother, Erin

9   Calvert, requested a special education due process hearing with the Office of Administrative

10  Hearings ("OAH") in an effort to exhaust his administrative remedies and pursue federal civil

11  rights claims against the Defendants and its employees.  Attached as Exhibit One[2].

12      The basis of O.L.'s special education complaint was that the District denied him a free

13  and appropriate public education from approximately September 2021 through December 2022.

14  While O.L. alleged several procedural and substantive violations of special education laws

15  against the District, the heart of his case centered around the lack of appropriate supports and

16  services, including O.L's educational placement.  O.L's case was further complicated because of

17  rural location where his mother resided.  As a result, a complicated settlement was reached

18  which would provide funding so O.L.'s parent could relocate to a locality where him and his

19  sister could be appropriately educated[3].  The District denies any wrongdoing.  O.L. alleges these

20  violations were so severe that they give rise to violations of Title II and Section 504.

21      Settlement was reached through formal and informal negotiations.  On April 12, 2022,

22  the Parties participated in a mediation with the OAH in an effort to seek a global settlement of all

23  claims.  While no settlement was reached at that time, the Parties continued to work towards a

24  global settlement, which was reached on or about May 1, 2022 ("the Agreement").  Attached as

25  Exhibit Two.  However, because the global settlement involves a resolution of damages claims

26

27  [2] Plaintiff has attached his Second Amended Complaint which is the operative complaint at this time.
    [3] O.L.'s sister is identified as C.L.  While C.L. is not a plaintiff in this matter or the underlying OAH matter, her

28  educational placement was addressed because O.L.'s mother could not relocate with just one child for obvious
    reasons.

1   on behalf of a minor child, the Agreement requires approval of this Court. If this Court approves

2   the Agreement, all conditions will have been met and the Parties will have an enforceable

3   settlement.

4          The OAH has continued the due process hearing dates in this matter based on the Parties

5   having reached the Agreement and in order to allow time for this Court to approve this Joint

6   Petition for Approval of Minor's Compromise ("Petition"). If this Court approves the Petition,

7   the OAH matter will be dismissed. By approving the Petition, the Court will save the Parties the

8   burden and costs of having to proceed through the OAH process to exhaust administrative

9   remedies to pursue federal civil rights claims. The Parties are committed to saving resources and

10  reaching a fair resolution. As discussed below, Plaintiff's counsel believes the Agreement is fair

11  and serves the best interest of O.L. The District's governing board approved the Agreement on

12  May 16, 2022.

13  <u>**DISCLOSURE OF ATTORNEY'S INTEREST PURSUANT TO LOCAL RULE 202(c)**</u>

14         O.L.'s attorney, Daniel Shaw, was retained by O.L.'s mother. See Exhibit Three Dec.

15  Daniel R. Shaw. The retainer agreement is contingent on the settlement of O.L.'s claims, or a

16  court determining O.L. is the prevailing party entitling O.L.'s mother to prevailing party

17  attorneys' fees and costs. *Id*. Daniel Shaw did not become involved in O.L.'s case at the

18  insistence of the District either directly or indirectly. *Id*. Daniel Shaw has no relationship to the

19  District. *Id*.

20  <u>**THE SETTLEMENT AGREEMENT**</u>

21         The Agreement will resolve fully, finally, and forever any and all known and unknown

22  claims, rights, demands, or causes of actions between O.L. and the Defendants that were raised

23  or could have been raised up to May 1, 2022. The Agreement does not impede O.L.'s rights to

24  receive a free and appropriate public education in the future so long as he qualifies.

25         **Settlement Terms:**

26         1.  The District will fund a special needs trust in the amount of eighty thousand dollars

27             ($80,000) to be placed in Plaintiff's legal counsel's client trust account. Plaintiff's

28             legal counsel will use a portion of the funds to establish a special needs trust with an

1   estate planning attorney as discussed in detail below.  It is estimated that creation of a

2   special needs trust will cost approximately six thousand dollars ($6,000).  Once the

3   trust is established, Plaintiff's counsel will deposit the remaining funds in the special

4   needs trust, which may be utilized for the following purposes:

      a.   Rent payments necessary for O.L.'s primary residence within a reasonable

         distance of the O.L.'s educational placement as detailed in his operative IEP.

      b.   Utility payments for the residence excluding cable television and internet.

      c.   Educationally related services, including tuition.

      d.   Extracurricular activities, including pro-social activities.

2.   The District will fund up to twenty thousand dollars ($20,000) in independent
education evaluations ("IEE") in the areas of psychoeducation (including Autism),
speech and language, occupational therapy, assistive technology and augmentative
and alternative communication, and functional behavior.  Once an assessment is
completed the District shall convene an IEP meeting to review the findings so long as
they are still the responsible local education agency.

3.   The District will place both O.L. and C.L. in a mutually agreed upon nonpublic
school.  Pursuant to Paragraph 1.3.1 of the Agreement, the Parties attempted to place
O.L. and C.L. at Aldar Academy, a nonpublic school approved by the California
Department of Education.  Unfortunately, that placement was unavailable for O.L.
and C.L.  However, the Parties agreed to place both students at Capitol Elementary, a
nonpublic school approved by the California Department of Education.  Capitol
Elementary has accepted both students and the Parties anticipate a start date of
September 5, 2023 or September 6, 2023.  The District will fund placement at Capitol
Elementary, including all services detailed in the student's operative individualized
education plans ("IEP"), until such time that Erin Calvert establishes permanent
residency as defined by the Agreement.

4.   Additionally, the District shall pay or reimburse Erin Calvert reasonable living
expenses in the amount of three thousand five hundred dollars ($3,500) once she has

secured independent housing for herself and her children.  This amount shall include rent and utilities, excluding cable TV and internet services.

5. Within five (5) business days of the special needs trust being funded, Erin Calvert's residence shall become the residence as provided in California Education Code §§ 48204.1, 48200, and 48204.  Eric Calvert shall enroll both O.L. and C.L. in the school district of residence based on her address.

6. The District will pay up to thirty-two thousand dollars ($32,000) for reasonable attorney's fees and costs to Snyder & Shaw LLP incurred as a result of the OAH administrative proceeding and work necessary to effectuate this Agreement.  While this likely does not cover the total fees and costs incurred in this matter, Plaintiff will not be responsible for paying any additional fees or costs Snyder & Shaw LLP.

**Special Needs Trust:**

1. The proposed settlement provides for immediate cash payments to O.L. through a Special Needs trust under 42 U.S.C. § 1396p(d)(4)(A) and California Probate Code § 3600, et seq.

2. Pursuant to Probate Code 3604(b), a Special Needs Trust may be established if the court determines all of the following:

   a) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap;

   b) That the minor or person with a disability is likely to have special needs that will not be met without the trust; and

   c) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor persons with a disability.

3. Pursuant to Probate Code Section 3604(b)(1), O.L. is a disabled special education student with Autism.  O.L.'s disabilities substantially limit him in a variety of major

005408.00101
39039994.1

1    life activities, including though not limited to, the ability to learn, concentrate, think,

2    read, socialize, behave, and perform activities of daily living.

3    4.  O.L. has struggled with severe behavioral challenges.  The following behaviors were

4    noted in his educational records: screaming, cussing (e.g. "I hate you", "I'll kill you",

5    "I am going to shit my pants"), elopement, property destruction (e.g. flipping desks,

6    throwing items, pushing over partitions, ripping up items), physical aggression (e.g.

7    hitting, kicking, etc.), spitting, work refusal, and other maladaptive behaviors. These

8    behaviors were occurring on a daily basis and at a much higher rate than documented

9    in the behavior intervention plan discussed below.

10   5.  O.L.'s behaviors were more than the District could address.  Furthermore, because of

11   the rural location of the District, there were no providers willing to travel to Janesville

12   to provide additional support on an on-going basis.  O.L.'s behaviors would not be

13   appropriately addressed if he remained in the District.

14   6.  Because O.L. is still eligible for special education, once he is placed, he remains

15   eligible to receive special education services, consistent with the requirements of state

16   and federal special education laws.

17   7.  Pursuant to Probate Code Section 3604(b)(2), O.L. has special needs that will not be

18   met without the special needs trust.  Placement of funds in a special needs trust will

19   ensure that O.L.  remains eligible to receive public assistance programs.  These

20   benefits are vital to O.L.'s continued support, safety, and personal well-being, and

21   include things such as personal care assistance, in-home supports, independent living

22   services, medical services, and other palliative care services that will not be met or

23   available without the protection offered by a special needs trust.

24   8.  Pursuant to Probate Code Section 3604(b)(3), the money to be paid to the trust does

25   not exceed the amount that appears to be reasonably necessary to meet the special

26   needs of O.L.

27   9.  While this Court is not bound by the California Rules of Court, the proposed special

28   needs trust will also fully comply with California Rule of Court, Rule 7.903.

1    Indicated below are the various sections of the proposed special needs trust that will

2    comply with Subsection (c) of Rule 7.903, which states: Except as provided in (d),

3    unless the court otherwise orders for good cause shown, trust instruments for trusts

4    funded by court order must:

5    a)  Not contain "no-contest" provisions;

6    b)  Prohibit modification or revocation without court approval;

7    c)  Clearly identify the trustee and any other person with authority to direct the

8        trustee to make disbursements;

9    d)  Prohibit investments by the trustee other than those permitted under Probate Code

10       section 2574;

11   e)  Require the trustee to file accounts and reports for court approval in the manner

12       and frequency required by Probate Code sections 1060 et seq. and 2320 et seq.;

13   f)  Require court approval of changes in trustees and a court order appointing any

14       successor trustee;

15   g)  Require compensation of the trustee or the attorney for the trustee, to be in just

16       and reasonable amounts that must be fixed and allowed by the court. The

17       instrument may provide for periodic payments of compensation on account,

18       subject to the requirements of Probate Code section 2643 and California Rule of

19       Court 7.755.

20                    **The Proposed Settlement is Fair to Plaintiff O.L.**

21        "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c),

22   to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177,

23   1181 (9th Cir.2011).  The Local Rules for this district provide that "[n]o claim by or against a

24   minor or incompetent person may be settled or compromised absent an order by the Court

25   approving the settlement or compromise."  L.R. 202(b).  "In the context of proposed settlements

26   in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own

27   inquiry to determine whether the settlement serves the best interests of the minor.'"  *Id*. (quoting

28   *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir.1978)).

1   When considering a proposed settlement in suits involving minor plaintiffs, the district

2   court is required to "conduct its own inquiry to determine whether the settlement serves the best

3   interests of the minor." *Id*., (quoting *Dacanay*).  In *Robidoux*, the Ninth Circuit held that district

4   courts should "limit the scope of their review to the question whether the net amount distributed

5   to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the

6   minor's specific claim, and recovery in similar cases." *Id*. at 1181–82.  Further, the fairness of

7   each minor plaintiff's net recovery should be evaluated "without regard to the proportion of the

8   total settlement value designated for adult co-plaintiffs or plaintiffs' counsel— whose interests

9   the district court has no special duty to safeguard." *Id*. at 1182 (citing *Dacanay*, 573 F.2d at

10  1078).

11  The Local Rules for this district provide that "[n]o claim by or against a minor or

12  incompetent person may be settled or compromised absent an order by the Court approving the

13  settlement or compromise." L.R. 202(b). "In actions in which the minor or incompetent is

14  represented by an appointed representative pursuant to appropriate state law, excepting only

15  those actions in which the United States courts have exclusive jurisdiction, the settlement or

16  compromise shall first be approved by the state court having jurisdiction over the personal

17  representative." L.R. 202(b)(1).  In all other actions, the motion for approval of a proposed

18  settlement shall be filed pursuant to Local Rule 230, and must disclose, among other things, the

19  following:

20          the age and sex of the minor or incompetent, the nature of the causes of action to
            be settled or compromised, the facts and circumstances out of which the causes of
21          action arose, including the time, place and persons involved, the manner in which
            the compromise amount or other consideration was determined, including such
22          additional information as may be required to enable the Court to determine the
            fairness of the settlement or compromise, and, if a personal injury claim, the
23          nature and extent of the injury with sufficient particularity to inform the Court
            whether the injury is temporary or permanent.  If reports of physicians or other
24          similar experts have been prepared, such reports shall be provided to the Court.
            The Court may also require the filing of experts' reports when none have
25          previously been prepared or additional experts' reports if appropriate under the
            circumstances.  Reports protected by an evidentiary privilege may be submitted in
26          a sealed condition to be reviewed only by the Court in camera, with notice of such
            submission to all parties.  L.R. 202(b)(2).

27

28

1    It should be noted, it was challenging to locate cases with similar factual allegations

2  because of unique posture of this case and the rural locality.  However, other cases with similar

3  factual allegations have been litigated and support Plaintiff's legal counsel's belief that the

4  Agreement contains terms in the best interest of O.L.  *See, e.g.*, *Warchol v. Kings Cty. Office of*

5  *Educ.*, No. 1:17-cv-00106-DAD-MJS, 2018 WL 1185053 (E.D. Cal. Mar. 7, 2018) (approving

6  net recovery of $56,488.32, where plaintiff diagnosed with autism alleged ongoing verbal and

7  physical abuse by teacher); *D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist.,* No. 1:11-cv-

8  01112-SAB, 2013 WL 275271 (E.D. Cal. Jan. 23, 2013) (approving net settlement payment of

9  $30,000 based on allegations that the school improperly used restraints and other punishments on

10  minor, resulting in a sprained ankle in one instance); *T.B. v. Chico Unified Sch. Dist.*, No. 2:07-

11  cv-00926-GEB-CMK, 2010 WL 1032669 (E.D. Cal. Mar. 19, 2010) (approving net settlement

12  payment of $16,500 based on allegations that the minor was subject to unnecessary force at

13  school).

14    In *C.F. v. San Lorenzo Unified Sch. Dist.*, No. 16-CV-01852-RS, 2016 WL 4521857, at

15  *2 (N.D. Cal. Aug. 29, 2016), plaintiff initiated claims arising under the Individuals with

16  Disabilities Education Act after the school district deemed C.F. ineligible to receive special

17  education services and support.  Before C.F. entered kindergarten, a parent asked the district to

18  perform special education testing.  Although the district complied, at the end of the assessment, it

19  concluded C.F. was ineligible to receive special education services.  While the action was

20  pending, the district reevaluated C.F. and concluded he was eligible to receive special education.

21  *Id*.  The court approved a settlement in the amount of $65,000, with $10,000 of the total fund

22  going to provide C.F. with educational services, and attorneys' fees in the amount of $55,000 of

23  the $65,000 fund.  *Id*.  ("[T]he primary goal of this action was to ensure C.F. received the special

24  education services he needs. The school district agreed to provide those services and to

25  compensate C.F. for any educational opportunities he lost while this litigation was ongoing.").

26    In *A.A. on behalf of A.A. v. Clovis Unified Sch. Dist*., No. 113CV01043AWIMJS, 2018

27  WL 1167927, at *3-4 (E.D. Cal. Mar. 6, 2018), report and recommendation adopted sub nom.

28  A.A. v. Clovis Unified Sch. Dist., No. 113CV01043AWIMJS, 2018 WL 1453243 (E.D. Cal.

Mar. 23, 2018), the court approved a settlement where $63,200 would be deposited into a special needs trust, and an additional $10,000 in settlement funds would be dedicated to trust administration, with the $63,200 "earmarked for a FAPE buyout, i.e., to provide A.A., Jr. with a free and appropriate education through the 2020–2021 school year, at which time his eligibility for services under the IDEA comes to an end."

In *D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist.*, No. 1:11-CV-01112-SAB, 2013 WL 275271, at \*2 (E.D. Cal. Jan. 23, 2013), plaintiffs alleged that the school failed to provide proper programs, services and activities to D.C. to accommodate his disability (attention deficit hyperactivity disorder and specific learning disability), and alleged that the school improperly used restraints on D.C. on multiple occasions, including one occasion where D.C. sprained his ankle and received medical treatment. The claims in were settled for the sum total of $65,000.00, with $30,000.00 to be disbursed to D.C. (held in a Uniform Minor's Account, with T.C. as custodian), $18,379.00 to T.C., $6,689.50 to legal fees, $6,689.50 to other legal fees, and $3,242.00 to Medi–Cal to satisfy potential liens related to D.C.'s medical treatment. *Id.* As supported by the above referenced cases, the Agreement in this case is comparable to or exceeds other net recoveries.

Accordingly, the net recovery to O.L., coupled with placement in a nonpublic school certified by the CDE, will be substantial. The amounts allocated to the special needs trusts will be more than sufficient to cover the costs of care for O.L. and to provide the compensatory services he therefore requires as a result of the incidents alleged. The terms of this Agreement allow O.L.'s mother to use funds from the trust for the purposes of providing the compensatory supports and services he requires, above and beyond what will provided at his nonpublic school placement. Plaintiff's counsel believes that the settlement is fair and reasonable. The District disputes the causation of O.L.'s injuries and damages.

In accordance and based on the forgoing, the Parties respectfully request that the Court approve the proposed the Agreement and the distribution of settlement funds as described herein.

///

///

Respectfully submitted,

Dated:   August 8, 2023                     __/S/ DANIEL R. SHAW_____
                                                          Daniel R. Shaw
                                                          Attorney for Plaintiff

Dated:   August 8, 2023                     __/S/ KYLE A. RANEY_____
                                                          Kyle A. Raney
                                                          Attorney for the District